IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| DEBRA F. ALDRIDGE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-cv-30 (WLS) |
| | : | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER

Before the Court is a March 17, 2014 Report and Recommendation from United States Magistrate Judge Thomas Q. Langstaff on this Social Security appeal. Judge Langstaff recommends the Court affirm the Commissioner's decision. The Report and Recommendation provided the Parties with fourteen (14) days to file written objections to the recommendations therein. (Doc. 14 at 8.). Plaintiff timely filed her objections on March 31, 2014. (Doc. 15.)

In his Report and Recommendation, Judge Langstaff found that the administrative law judge's (ALJ) residual functional capacity assessment is supported by substantial evidence. Judge Langstaff also found that the ALJ did not base his credibility determination upon Plaintiff's noncompliance with treatment due to her inability to pay. (*Id.* at 4-6). Further, Judge Langstaff found that the ALJ did not err in finding that other jobs exist in the national economy that Plaintiff is capable of performing. (*Id.* at 6-7). In her Objections to the Recommendation ("Objections"), Plaintiff takes issue with each of the Judge Langstaff's

1

findings and asserts that Judge Langstaff never addressed whether the ALJ misrepresented Plaintiff's daily life activities and applied an incorrect legal standard in evaluating Aldridge's daily life activities. (Doc. 15 at 3.)

The Court agrees with Judge Langstaff that the ALJ's RFC determination is supported by substantial evidence and that "Plaintiff has failed to establish that the nerve conduction study results established limitations other than those set out by the ALJ in his residual functional capacity assessment." (Doc. 14 at 4.) The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, and a court may not reweigh the evidence in determining whether an ALJ's decision was supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In determining Plaintiff's residual functional capacity, the ALJ relied on medical evidence from treating physicians and agency physicians as well as Plaintiff's statements regarding her daily life activities. (Doc. 10-2 at 20-24.) Plaintiff specifically asserts that the results of a June 2010 nerve conduction study evidenced greater limitations than those found by the ALJ. (Doc. 15 at 1-2.) This study was conducted by a treating physician did not make a finding of functional limitations based on his clinical observations. Even accepting Plaintiff's argument that not all treating physicians make functional limitation determinations in the course of diagnosis and treatment, Plaintiff has failed to establish that the symptoms evidenced by this study actually lead to functional limitations. (*See* Doc. 14 at 3-4.)

The Court also agrees with Judge Langstaff that the ALJ did not err in determining that Plaintiff's statements concerning her alleged symptoms were not credible to the extent

they were inconsistent with the ALJ's residual functional capacity assessment. (Doc. 14 at 4-6.) Again, this Court will not reweigh the evidence in determining whether the ALJ's finding is supported by substantial evidence. The ALJ's finding that Plaintiff's statements regarding her alleged symptoms were not credible is supported by substantial evidence, including objective medical evidence and Plaintiff's own statements regarding her daily life activities. (Doc. 10-2 at 20-24.)

Plaintiff first asserts that the ALJ required Plaintiff's daily life activities to resemble those of an "incapacitated person," applying an improper standard in determining her residual functional capacity. (Doc. 15 at 3.) Residual functional capacity is an "individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8p. In her brief, Plaintiff cites the ALJ's decision, which states Plaintiff's daily life activities are "far more compatible with a person able to sustain competitive work than they are with those of an incapacitated person." (Doc. 11 at 13 (citing Doc. 10-2 at 23).) However, Plaintiff does not point to any evidence, other than the one-time use of the phrase "incapacitated person," that the ALJ applied the incorrect standard in determining her residual functional capacity. After a thorough review of the ALJ's decision, the Court finds that the ALJ applied the correct standard in determining Plaintiff's residual functional capacity. Furthermore, the Court agrees with Judge Langstaff's finding that the ALJ properly considered Plaintiff's daily life activities. (Doc. 14 at 4.)

Plaintiff also specifically asserts that the ALJ misrepresented Plaintiff's statements regarding her daily life activities by "omitting critical qualifiers." (Doc. 15 at 3.) The ALJ relied on Plaintiff's statement that she is able to perform a number of daily life activities,

3

including driving, grocery shopping, and swimming with her children "when [she is] able to, when [she is] not hurting as bad." (Doc. 10-2 at 67.) The Court agrees with Judge Langstaff's finding that the ALJ accurately represented Plaintiff's description of her daily life activities. The Court finds that the ALJ properly relied, in part, on Plaintiff's description of daily life activities even though she included an indefinite qualifier.

Furthermore, Plaintiff asserts that the ALJ erred in relying on her noncompliance caused by her inability to pay for treatment in making its credibility determinination. An ALJ may note a claimant's noncompliance that results from inability to pay so long as he does not base his decision on that noncompliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1212 (11th Cir. 1988). Even if the ALJ considered Plaintiff's noncompliance, the ALJ gave no indication that he based his determination on this fact (*see* Doc. 10-2 at 23), and the other evidence considered by the ALJ is substantial enough to support his finding that Plaintiff's testimony regarding her pain and other symptoms was not credible. The ALJ found that "the objective medical evidence reveals mostly mild or generally unremarkable findings." (Doc. 10-2 at 23.) The ALJ's decision does not rest on the fact that these "mostly mild or generally unremarkable findings" could further be minimized by prescription medications that Plaintiff was not taking.

Finally, the Court agrees that the ALJ properly determined that there are jobs in the national economy that Plaintiff is capable of performing. Plaintiff asserts that the ALJ erred by failing to make specific findings regarding whether Plaintiff's skills are transferable. (*Id.* at 6-7.)

> When the table rules in Appendix 2 [of 20 C.F.R. 404, Subpart P, App. 2] are applicable to a case, transferability will be decisive in the conclusion of

4

> "disabled" or "not disabled" in only relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

SSR 82-41. Here, the ALJ relied on the framework in Appendix 2 of the Medical-Vocational Rules and the testimony of a vocational expert (VE) in determining whether there are jobs in the national economy that Plaintiff is capable of performing. The VE testified that someone with Plaintiff's residual functional capacity and vocational experience could perform the semi-skilled jobs of companion, general office clerk, and telephone solicitor and the unskilled job of small products assembler. (Doc. 10-2 at 78-80.) The Court agrees with Judge Langstaff's finding that whether Plaintiff's skills were transferable is not material to whether Plaintiff can perform certain semi-skilled jobs because a finding that Plaintiff is not disabled can be based solely on her ability to do unskilled work. SSR 82-41.

Therefore, for all of the above reasons, Plaintiff's Objections (Doc. 15) are **OVERRULED**, and U.S. Magistrate Judge Langstaff's March 17, 2014 Recommendation (Doc. 14) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein, together with the reasons stated and conclusions reached herein. The Commissioner's decision is hereby **AFFIRMED**.

**SO ORDERED**, this 19th day of August 2014.

>                         /s/ W. Louis Sands
>                         **W. LOUIS SANDS, JUDGE**
>                         **UNITED STATES DISTRICT COURT**